# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 16-21098-JLK

LORRAINE SCOTT, MICHAEL MINCEY,
and OSVALDO MUNIZAGA,

      Plaintiffs,

v.

CITY OF MIAMI,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant CITY OF MIAMI's Motion for Summary Judgment (DE 13), filed February 13, 2017. The Court has additionally considered Plaintiffs' Response (DE 18), filed March 14, 2017, and Defendant's Reply thereto (DE 24), filed March 21, 2017.

## BACKGROUND

This case arises under the Fair Labor Standards Act ("FLSA"), Title 29 of the United States Code, section 207(a)(1). Plaintiffs Lorraine Scott, Michael Mincey, and Osvaldo Munizaga are each employed as Public Works Supervisors for Defendant City of Miami. Scott is assigned to the Landscaping and Grass section, Mincey is assigned to the Streets and Roads section, and Munizaga is assigned to the Storm Drain section.

1

Plaintiffs allege that Defendant has violated FLSA by failing to pay them overtime wages. DE 1 at 5. Defendants have moved for Summary Judgment, contending that Plaintiffs are not entitled to overtime wages because Plaintiffs are exempted from FLSA coverage as "executive" employees. *See* DE 13 at 12. Plaintiffs respond that they are not "executive" employees as defined by FLSA because they performed manual labor alongside their crews and had no real supervisory authority. *See* DE 18 at 1. The matter is now ripe for this Court's review.

## LEGAL STANDARD

"Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fat and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy[,] and inexpensive determination of every action." *Pace v. Capobianco*, 283 F.3d 1275, 1284 (11th Cir. 2002). Summary judgment is appropriate unless there is a genuine issue of fact for trial. *Agee v. Porter*, 216 F. App'x 837, 840 (11th Cir. 2007). "For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). In opposing a motion for summary judgment, the nonmoving party "must show specific facts to support that there is a genuine dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not rely on the

2

pleadings, but rather must demonstrate a genuine issue for trial through affidavits, depositions, interrogatory answers, and admissions. *Celotex*, 477 U.S. 323-24. The existence of a "mere scintilla" of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the finder of fact could reasonably find for the moving party. *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 840-41 (11th Cir. 2014) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

## DISCUSSION

FLSA mandates that employers must pay employees time and a half for time worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). However, this requirement does not apply to "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). An employer asserting an exemption bears the burden of proving that the exemption applies. *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1378 (S.D. Fla. 2014). Further, "[e]xemptions under the FLSA are to be construed narrowly against the employer who asserts them." *Id.* (citations omitted). In determining whether an employee has executive status, the Court cannot rely on the employee's job title alone. 29 C.F.R. § 541.2 (2016). Rather, the employer must satisfy both a salary-basis test and a primary duties test to demonstrate that an employee qualifies under this exemption. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621 (11th Cir. 2004). Specifically, the Department of Labor Regulations provide that an employee's status as an executive is determined based on a factual analysis of whether (1) the employee receives a salary greater than $455 per week, (2) the employee's primary duty is management, (3) the

3

employee customarily and regularly directs the work of two or more other employees, and (4) the employee either has the authority to hire or fire, or the employee's "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100 (a)(1-4) (2016). After careful review, the Court finds that Plaintiffs hold executive positions, and are thus exempt from FLSA's overtime requirements. The Court will address each factor in turn.

### 1. Plaintiffs Receive a Salary Greater than $455 Per Week

Plaintiffs do not dispute that they receive a salary greater than $455 per week. *See* DE 18. In fact, Plaintiffs' salaries far exceed the minimum to be exempt under FLSA, with Mincey and Munizaga each making $63,398 per year, and Scott making $73,216. DE 13-2 at 289; DE 13-3 at 276; DE 13-1 at 298. Accordingly, this factor is satisfied.

### 2. Plaintiffs Regularly Direct the Work or Two or More Employees

The second factor the Court must consider is whether Plaintiffs directed the work of at least two employees. The undisputed evidence shows that Scott supervised a crew of at least twelve employees since she became a supervisor in 2006, Mincey has supervised an average of eleven to seventeen people since he became a supervisor in 2013, and Munizaga has supervised an average of nine employees since he became a supervisor in 2014. DE 13-1 at 26-28; DE 13-2 at 26-27; DE 13-3 at 15-26-27. Accordingly, this factor is also satisfied.

### 3. Plaintiff's Primary Duty is Management

The third factor entails a more detailed factual analysis. Under FLSA an employee's "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). An employee's primary duty is based on an analysis of the totality of the circumstances. Factors that the Court may consider include "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision." 29 C.F.R. § 541.700. Although the amount of time spent performing exempt activities is a useful guide in determining primary duty, "[t]ime alone . . . is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700.

Plaintiffs assert that their primary duty was not management because they performed manual labor, such as operating equipment and collecting debris. However, "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements . . . are otherwise met." 29 C.F.R. § 541.106(a). Accordingly, the Court must conduct a factual analysis of whether, in addition to nonexempt work, Plaintiffs primarily performed exempt managerial activities.

The Department of Labor Regulations set forth the following list management activities for courts to look for when making a primary duty determination: (1)

interviewing, selecting, and training of employees; (2) setting and adjusting their rates of pay and hours of work; (3) directing the work of employees; (4) maintaining production or sales records for use in supervision or control; (5) appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; (6) handling employee complaints and grievances; (7) disciplining employees; (8) planning the work; (9) determining the techniques to be used; (10) apportioning the work among the employees; (11) determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; (12) controlling the flow and distribution of materials or merchandise and supplies; (13) providing for the safety and security of the employees or the property; (14) planning and controlling the budget; and (15) monitoring or implementing legal compliance measures. 29 C.F.R. § 541.102. After careful review of the record, the Court finds that Plaintiffs performed a majority of the managerial tasks outlined in the Regulations.

To begin with, the record shows that Plaintiffs each played a role in directing, planning, and apportioning the work of their respective crews. Indeed, it is undisputed that Plaintiffs distributed work orders and performed inspections of job sites on a regular basis. DE 13-1 at 295; DE 13-2 at 287-88; DE 13-3 at 274-75. Moreover, Scott testified that she directs her crew members as to where to go for assignments. DE 13-1 at 38. She further agreed that her crew must adhere to her direct orders. *Id.* at 53. Mincey similarly testified that he controlled the flow of work, directed crew members to do particular jobs, and determined which crew member would be assigned a task by choosing "the best crew

member to handle the job." DE 13-2 at 32, 105. Mincey further testified at length regarding planning, stating that he would inspect sites "to see what the big picture is on that particular job, more or less what is going to be needed to address it." *Id.* at 35. Munizaga likewise testified that as supervisor, he directed his crew to do work and determined the number of workers necessary for any given assignment. DE 13-3 at 37-38, 114-15.

The record also evinces that Plaintiffs played a role in training their crew members. Scott specifically testified that she was partly responsible for employee training. DE 13-1 at 50-51. With respect to Mincey, a performance appraisal authored by the Chief of Public Works Operations indicates that Mincey is responsible for providing "on the job training." DE 13-2 at 350. The evidence further demonstrates that Munizaga also engaged in training, as he testified that he "coached" his crew members to ensure that they understood the rules regarding safety at a job site. DE 13-3 at 101.

Plaintiffs also managed employee leave and complaints. With respect to the management and documentation of employee hours, the record contains copies of overtime and leave request forms that Plaintiffs signed and approved for submission to their director. *See* DE 13-1 at 334-358; DE 13-2 at 318-35; DE 13-3 at 66, 325-32. Moreover, Plaintiffs each testified that employee grievances and problems with

7

equipment were also reported to them. *See* DE 13-1 at 39, 94; DE 13-2 at 62-65, 336; DE 13-3 at 38.[1]

The record also contains invoices showing that Scott and Munizaga each exercised authority over budget expenditures by approving payments to independent contractors. *See* DE 13-1 at 54, 360-89; DE 13-3 at 80, 334-39. Specifically, Scott approved periodic payments toward a $152,686.14 contract, and Munizaga approved periodic payments toward a $61,440.85 contract. DE 13-1 at 360-89; DE 13-3 at 80, 334-39.

In addition, the undisputed evidence establishes that each Plaintiff provided for the safety of their employees. With respect to Scott, an appraisal authored by the superintendent states that one of Scott's objectives as a supervisor is to apprise her employees of the safety measures set forth in the City's administrative policy memoranda. DE 13-1 at 109. To the same effect, Mincey testified that if there was an unsafe condition on the job site, he would inspect it, delegate tasks to the proper crew members, and come up with a solution to make the job site safe. DE 13-2 at 64. Munizaga likewise agreed during deposition that ensuring safety was part of his job. 13-3 at 124.

Finally, the record demonstrates that each Plaintiff performed appraisals of their employees and issued disciplinary procedures. Specifically, Plaintiffs conducted annual performance appraisals of their crew members, where they rated the employee on a

---

[1] Although Mincey denied that equipment issues were reported to him, the "Report of Incident/Property Damage/Injury" form he completed indicates that he is, in fact, responsible for reporting damaged equipment. DE 13-2 at 336.

numerical scale, wrote detailed notes regarding the performance of the employee, and outlined goals and objectives for future performance. *See* DE 13-1 at 303-39; DE 13-2 at 291-311; DE 13-3 at 313-24. For probationary employees, these appraisals determine whether the employee will retain a permanent position or be terminated. *See* DE 13-3 at 38 (employee was promoted because of Munizaga's positive evaluation); *see also* DE 13-1 at 43 (Scott testifying that appraisals affect the job status of probationary employees and are used to increase pay scale).

As for employee discipline, Plaintiffs each completed Records of Formal Counselling, which is a form used to document behavioral or procedural violations by employees. The form contains fields such as "Corrective Action to be Taken" and "Possible Consequences Should Incident Occur Again." For instance, on one such form, Scott reported an employee who used profanity toward another employee, and concluded "if [employee] continues with this type of behavior she will be reprimanded or subject to suspension." DE 13-1 at 330. This incident was eventually taken to arbitration, where Scott testified. DE 13-1 at 45.[2] Similarly, a form completed by Mincey describes an employee who caused damage to equipment, concluding "if this incident occurs again we will follow through with the next step of progressive discipline." DE 13-2 at 315. Plaintiff Munizaga likewise completed a disciplinary form for a crew member who failed to follow instructions, and concluded "if this matter keep [sic.] happening, other measures will be taken in accordance with the [procedures] set by the city." DE 13-3 at

---

[2] From the record, it is unclear what the result of the arbitration was.

339. Therefore, it is clear from the record that Plaintiffs conducted disciplinary procedures by executing and submitting these forms.

To sum, the testimony by Plaintiffs and the various administrative forms found in the record all establish that Plaintiffs regularly exercised managerial authority over their employees. Accordingly, it is undisputed that Plaintiffs' primary duty was management.

### 4. Plaintiffs' Recommendations as to the Status of Other Employees are Given Particular Weight

The final factor in the Court's executive-exemption analysis is whether Plaintiffs have hiring and firing power, or, in the alternative, whether their recommendations as to the status their employees are given particular weight. Plaintiffs maintain that they had no influence over the status of their crew members' jobs. However, as evinced by the performance appraisals and disciplinary forms described in the previous section of this Order, Plaintiff's recommendations as to their crew member's job statuses were clearly afforded great weight. Indeed, Scott testified that the employee appraisal forms affected pay scale and determined whether a probationary employee would retain a permanent position or be terminated. 13-1 at 43. This was further corroborated by evidence that a positive performance appraisal completed by Munizaga resulted in the promotion of an employee. DE 13-3 at 38.

Furthermore, it is evident on the face of the form that the Department Director relies on Plaintiffs' evaluations as supervisors prior to signing off on the appraisals. Indeed, as supervisors, Plaintiffs sign an acknowledgement at the end of the appraisal

form stating, "The evaluation is based on *my* observations and review of applicable information. It represents *my* best judgment of the employee's performance." *See, e.g.*, DE 13-3 at 315 (emphasis added). In contrast, the Department Director simply signs an acknowledgement stating, "I have reviewed this evaluation and concur." Therefore, it is obvious that the Department Director places significant weight on Plaintiffs' employee evaluations.

The disciplinary forms completed by Plaintiffs likewise demonstrate that their recommendations influence the status of their crew members. As previously discussed, the record demonstrates that such forms effectively functioned as the first step in discipline, and provided a record of the incident which could be relied upon during further disciplinary proceedings.

Accordingly, taking into consideration the facts set forth by the record, there is no dispute that Plaintiff's recommendations as to the status of their employees were granted particular weight by their superiors.

## CONCLUSION

After careful review of the record, the Court finds that Plaintiffs are executive employees who are exempted from FLSA's overtime requirements. Accordingly, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant's Motion for Summary Judgment **(DE 13)**, be, and the same is, hereby **GRANTED**. By separate Order, the Court shall enter Final Judgment on behalf of Defendant and against Plaintiffs.

**DONE** and **ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 18th day of April, 2017.

				JAMES LAWRENCE KING
				UNITED STATES DISTRICT JUDGE
				SOUTHERN DISTRICT OF FLORIDA

Cc:	All counsel of record